**IN THE COURT OF APPEALS OF IOWA**

No. 23-0735
Filed July 13, 2023

**IN THE INTEREST OF Z.H.,**
**Minor Child,**

**K.H., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant mother.

Brenna Bird, Attorney General, and Diane Murphy Smith, Assistant Attorney General, for appellee State.

Misty White of White Law Office, PLLC, Sigourney, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Tabor and Greer, JJ.

**BOWER, Chief Judge.**

The mother of Z.H., born in 2018, appeals the termination of her parental rights pursuant to Iowa Code section 232.116(1)(f) and (*l*) (2023).[1] She does not challenge whether grounds for termination exist;[2] rather, she asserts termination of her parental rights is not in the child's best interests and the juvenile court should have granted her an additional six months to achieve reunification.

We review proceedings terminating parental rights de novo. *A.B.*, 957 N.W.2d at 293. "We are not bound by the factual findings of the juvenile court, though we give them respectful consideration, particularly regarding credibility determinations." *Id.*

The child has been exposed to the mother's long-term methamphetamine abuse. The family has been involved with the Iowa Department of Health and Human Services (HHS) since October 2021, when a child-abuse assessment was founded due to the mother using methamphetamine and marijuana before caring for the child. Voluntary services were provided to the family, and the mother agreed to a safety plan. In October, the child was voluntarily placed in the father's care for about two weeks, but he returned the child to the maternal grandmother's care and did not participate in services. Z.H. was removed from parental custody

---

[1] The child's father did not appeal the termination of his rights.
[2] Our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). We need not discuss unchallenged steps in the analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

and adjudicated a child in need of assistance in March 2022 and found some stability in the care of the maternal grandmother.

After the April 18 dispositional hearing, the court found removal from the home was appropriate "due to mother's substance abuse issues, mental health issues and need for treatment, and due to her inability to properly care for the child at this time."

A review hearing was held in October. The court noted the mother "continues to work on her substance abuse addiction" but had recently tested positive for alcohol. The court determined, "The continuation of the child in the child's home would affect the child's welfare by exposing the child to a parent whose judgment could be impaired by substance abuse which would lead to inadequate supervision of the child."

The mother tested positive for methamphetamine in December 2022. Her visits with the child remained fully supervised. But, on January 11, 2023, the grandmother allowed the mother to care for the child unsupervised. Z.H. was removed from the grandmother's care and had a short placement with the grandfather, which ended after a formal background check. Z.H. was then placed in her current pre-adoptive relative home where she is receiving services and doing well.

A permanency hearing was held on February 21, and the court continued the hearing for additional evidence. In the meantime, the State filed a petition to terminate the mother's parental rights, and a combined hearing was held on April 18. After the hearing, the juvenile court found continuing relative placement of the child was necessary because the mother had not resolved her substance-

abuse issues and was unable to provide appropriate supervision for the child or demonstrate sobriety and stability for very long. The court noted the mother was diagnosed with Stage 1 heart failure in September 2022 but continued to smoke, drink alcohol, and use methamphetamine. Her heart failure progressed rapidly to Stage 4, requiring multiple hospitalizations in January 2023. Her heart condition leaves her short of breath and fatigued. Despite her need for medical intervention, which requires she remain free of tobacco, alcohol, and all illegal substances for six months, she continues to smoke. The mother has a two-hour weekly supervised visit with the child; she is not prepared for visits, is unable to identify the child's emotional needs, engages in inappropriate conversations with the child, and cuts the visits short to smoke. She could not care for the child without support.

The caseworker was asked whether an additional six months would be warranted. She responded:

> Unfortunately, at this point, given not only the history of the substance abuse but also now [the mother's] deterioration of her medical condition, that's extremely concerning. What I was told by the nurse at the University was that really, the only thing that is keeping [the mother] alive right now is her young age.
> Q. And do you feel it's in the best interest of [Z.H.] that the State file a petition for termination of parental rights? A. Yes.

The child's guardian ad litem agreed with HHS's recommendation to terminate the mother's parental rights.

On appeal, the mother does not deny her relapse and acknowledges she is in need of additional services. But she points to her sobriety since January 2023 and current enrollment in inpatient residential treatment. The mother asserts, "[I]t is in the best interests of the child to have the child returned to her care, or, in the

alternative, for the court to have granted her an additional six months to participate in parenting skill building and to obtain more sobriety time." We cannot agree.

In light of the mother's history with methamphetamine use and heart condition, she would need to demonstrate maintenance of sobriety and improved health for a period of time before the child could be placed in her care. Additional time is appropriate only if "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b); *see also id.* § 232.117(5) (stating if juvenile court does not terminate parental rights, it may enter an order under section 232.104). The juvenile court wrote:

> The court believes mother deserves recognition for the steps she has taken since late January of this year to start to address her substance abuse, mental health and parenting issues. Even so, an additional six months of services would not be likely to result in return of the child. At best it would barely give the mother time to successfully complete her current treatment and then try to start life on her own. There would not be enough time for mother to demonstrate she could safely parent this child.

"While we recognize the law requires a 'full measure of patience with troubled parents who attempt to remedy a lack of parenting skills,' Iowa has built this patience into the statutory scheme of Iowa Code chapter 232." *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000) (citation omitted). "Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *Id.* at 495. We agree with the juvenile court that additional time is not warranted. This young child is in need of permanency, and the mother is in no position to provide that permanency now or in the near future. Z.H. is integrated into her current placement, family, and routine. Z.H. has now received long-needed medical and dental treatment, as well as started therapy to address an attachment disorder. As

required by Iowa Code section 232.116(2), we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." We conclude termination of the mother's parental rights is in the child's best interests. We thus affirm.

**AFFIRMED.**